UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREE STREAM MEDIA CORP., <br> Plaintiff, <br> v. <br> ALPHONSO INC., et al., <br> Defendants. | Case No. 17-cv-02107-RS (KAW) <br><br> **ORDER GRANTING MOTION TO QUASH** <br> Re: Dkt. No. 200 |

On November 6, 2015, Plaintiff Free Stream Media Corp., d/b/a Samba TV, brought the instant patent infringement case against Defendants Alphonso Inc., Ashish Chordia, Raghu Kodige, and Lampros Kalampoukas. (Dkt. No. 1.) Pending before the court is third-party Shazam Media Services Inc.'s ("Shazam") motion to quash Plaintiff's subpoena. (Shazam Mot., Dkt. No. 200-1.) The court deems the matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Shazam's motion to quash the subpoena.

## I. BACKGROUND

On January 24, 2017, Defendants issued a subpoena to Shazam, requesting the production of documents related to: (1) the design, development, and/or operation of the Shazam iPhone app; (2) the design, development, and/or operation of the Shazam Android app; (3) the design, development, and/or operation of ShazamID; (4) the design, development, and/or operation of any servers that communicated with ShazamID, the Shazam iPhone app, or the Shazam Android app; (5) where and when the Shazam iPhone app was first used in the United States; (6) meetings with third parties demonstrating the Shazam iPhone app prior to November 26, 2008; (7) where and when the Shazam Android app was first used in the United States; (8) meetings with third parties

demonstrating the Shazam Android app prior to November 26, 2008; (9) where and when ShazamID was first used in the United States; (10) meetings with third parties demonstrating ShazamID prior to November 26, 2008; (11) the software and source code of the Shazam iPhone app from November 25, 2008; (12) the software and source code of the Shazam iPhone app from January 5, 2012; (13) the software and source code of the Shazam Android app from November 25, 2008; (14) the software and source code of the Shazam Android app from January 5, 2012; (16)[1] the software and source code of ShazamID from November 25, 2008; (17) the server source code for processing song identification requests using the Shazam iPhone app from November 25, 2008; (18) the server source code for processing song identification requests using the Shazam iPhone app from January 5, 2012; (19) the server source code for processing song identification requests using the Shazam Android app from November 25, 2008; (20) the server source code for processing song identification requests using the Shazam Android app from January 5, 2012; and (21) the server source code for processing song identification requests using ShazamID from November 25, 2008. (Dkt. No. 200-3 ("Roe Decl."), Exh. 1.) The subpoena defined Shazam iPhone app, Android app, and Shazam ID as the versions that existed as of November 25, 2008. (*Id.*)

Following receipt of the subpoena, Shazam produced certain documents for Defendants' inspection on February 13, 2017. (Roe Decl. ¶ 6.) Defendants later agreed to pay part of Shazam's expenses incurred in producing documents from archived and other databases, and Shazam made a second document production on July 12, 2017. (Shazam Mot. at 3.) On August 4, 2017, Defendants requested additional documents pursuant to the January 24, 2017 subpoena, and also provided notice that it intended to issue a deposition subpoena to Shazam. (Roe Decl. ¶ 18.) Following additional meet and confer, Defendants again agreed to pay part of Shazam's expenses incurred with a third document production. (Roe Decl. ¶ 19.) Shazam made its third document production on September 1, 2017. (Roe Decl. ¶ 20.)

On August 16, 2017, Defendants served a deposition subpoena, commanding Shazam to

---

[1] Defendants' requests for production did not include No. 15. (*See* Roe Decl., Exh. 1 at 8.)

produce a corporate witness to testify on: (1) the subject matter of Defendants' requests for production ("RFPs"); (2) the subject matter of all documents produced in response to the RFPs; (3) the authenticity and public availability of the documents produced in response to the RFPs; (4) the public availability of the Shazam iOS app, Android app, and web portal; (5) the design, development, and operation of the Shazam iOS app, Android App, and web portal; (6) the functionality of the Shazam iOS app, Android app, and web portal; (7) the functionality of the Shazam system for maintaining and authenticating user account information; (8) the functionality of the Shazam iOS app, Android app, and web portal for preparing and submitting content identification requests; (9) the functionality of the Shazam System for processing content identification requests; (10) the functionality of the Shazam System for identifying and retrieving metadata, add-ons, recommendations, and/or advertisements; (11) the functionality of the Shazam System for sending retrieved metadata, add-ons, recommendations, and/or advertisements; and (12) the functionality of the Shazam iOS app, Android app, and web portal for displaying metadata, add-ons, recommendations, and/or advertisements. (Roe Decl., Exh. 7.) The deposition subpoena definitions further limited the timeframe to the versions of the Shazam iOS app, Android app, web portal, and System that existed on or before May 28, 2013. (*Id.*) The deposition subpoena was also provided to Plaintiff. (*Id.*) Following the meet and confer process, Shazam agreed to produce a corporate witness -- who was located in London, England -- for deposition on September 7, 2017, at Shazam's counsel's offices in New York. (Roe Decl. ¶ 23.)[2]

On August 28, 2017, at 7:24 p.m. PST/10:24 p.m. EST, Plaintiff e-mailed a document and deposition subpoena to Shazam, asking if Shazam would accept e-mail service. (Roe Decl., Exh. 8.) The subpoena requested production of documents and a deponent on September 7, 2017 at Shazam's counsel's office in New York. The document requests and deposition topics concerned: (1) any agreements between Shazam and Defendants; (2) any payments between Shazam and Defendants; (3) any information exchanged between Shazam and Defendants; (4) any services exchanged between Shazam and Defendants; (5) any communications between Shazam and

---

[2] On August 30, 2017, Defendants served an amended deposition subpoena that withdrew deposition topic nos. 1 and 5. (Roe Decl., Exh. 11.)

3

Defendants regarding the instant litigation; (6) Shazam's use of Defendants' technology; and (7) Defendants' use of Shazam's technology.[3] (Roe Decl., Exh. 9.) Plaintiff's eighth deposition topic related to "[e]ach deposition topic identified in [Defendants'] August 16, 2017 subpoena." (*Id.*) This topic is not the subject of the current motion to quash. (Shazam Mot. at 6.)

On August 29, 2017, at 8:09 a.m. PST/11:09 a.m. EST, Shazam informed Plaintiff that it had received Plaintiff's request. (Roe Decl., Exh. 10.) At 12:42 p.m. PST/3:42 p.m. EST, Shazam stated that it would accept the subpoena "as of today--the day Shazam received such subpoena." (*Id.*)

The parties met and conferred on September 1, 2017. (Roe Decl., Exh. 13.) On September 4, 2017, a national holiday, Plaintiff e-mailed Shazam with narrowed deposition topics, requesting: (1) any agreements related to Shazam providing data to Defendants from November 6, 2015 to the present; (2) withdrawn; (3) any data provided by Shazam to Defendants related to agreements described in topic 1; (4) any services provided by Shazam to Defendants related to agreements described in topic 1; (5) any communications between Shazam and Defendants regarding the instant litigation from November 6, 2015 to the present; (6) any use by Shazam of Defendants' technology or information relating to the agreements described in topic 1; (7) withdrawn; and (8) each deposition topic identified in Defendants' August 30, 2017 amended subpoena. (*Id.*) Plaintiff also narrowed the RFPs to documents related to: (1) any agreements between Shazam and Defendants from November 6, 2015 to the present; (2) withdrawn; (3) any data provided by Shazam to Defendants as described in deposition topic 3, how that data was generated, and how that data was provided to Defendants; (4) any services provided by Shazam to Defendants as described in deposition topic 4, how that data was generated, and how those services were provided to Defendants; (5) withdrawn; (6) communications sufficient to show use by Shazam of Defendants' technology or information as described in deposition topic 6; and (7) withdrawn. (*Id.*)

---

[3] Plaintiff's eighth deposition topic was for all deposition topics identified in Defendants' August 16, 2017 deposition subpoena. (Roe Decl., Exh. 9.) Shazam did not challenge this topic in its motion. (*See* Shazam Mot. at 6.)

4

1    On September 5, 2017, Shazam rejected the narrowed subpoena request. (Roe Decl., Exh. 13.) Shazam stated that the corporate witness scheduled to testify on September 7, 2017, was already traveling from England and thus there was no opportunity to discuss Plaintiff's e-mail with the corporate witness prior to September 5, 2017. Further, Shazam objected to the revised subpoena requests as overly broad and unduly burdensome, and as failing to allow reasonable time to comply. Shazam pointed out that during meet and confer, Plaintiff had identified one agreement between Shazam and Defendants that was entered into over the last 60 to 90 days, yet Plaintiff was still seeking information covering the span of two years on unspecified subject matter and technology. (*Id.*) Shazam informed Plaintiff that it intended to file a motion to quash.

That same day, Shazam filed this motion to quash the subpoena, on the grounds that: (1) the subpoena did not give Shazam a reasonable amount of time to comply, and (2) the subpoena imposed an undue burden on Shazam. (Shazam Mot. at 7, 9.) On September 19, 2017, Plaintiff filed its opposition. (Plf.'s Opp'n, Dkt. No. 216.) On September 26, 2017, Shazam filed its reply. (Shazam Reply, Dkt. No. 235.)

## II.    LEGAL STANDARD

Under Rule 26, in a civil action, a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Additionally, the court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 45 also specifically provides that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply

5

beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena. Rule 45 provides, among other things, that a party may command a non-party to testify at a deposition. Fed. R. Civ. P. 45(a)(1)(A)(iii). The scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *Beaver Cty. Employers Ret. Fund v. Tile Shop Holdings, Inc.*, No. 3:16-mc-80062-JSC, 2016 WL 3162218, at *2 (N.D. Cal. June 7, 2016) (citing Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970); Fed. R. Civ. P. 34(a)).

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin,* No. 3:16-mc-80066- JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016) (quotation omitted); *see United States v. C.B.S., Inc.,* 666 F.2d 364, 371-72 (9th Cir. 1982) ("Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party"). Courts in this district have consequently held that "[o]n a motion to quash a subpoena, the moving party has the burden of persuasion . . . , but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger,* No. 3:12-mc-80237-CRB, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (citation omitted); *see also Optimize Tech. Solutions, LLC v. Staples, Inc.*, No. 5:14-mc-80095-LHK, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." (quotation omitted)).

### III. DISCUSSION

#### A. Reasonable Amount of Time to Comply

First, the parties dispute whether Shazam was given a reasonable amount of time to comply with Plaintiff's subpoena. Again, Rule 45 requires that a court quash or modify a subpoena if it "fails to allow a reasonable time to comply." "The question of whether the time to comply with a subpoena is a fact-specific inquiry; courts generally have found that fewer than ten

6

days is not reasonable." *Gordon v. Sonar Capital Mgmt. LLC*, No. C 15-80080 LB, 2015 WL 1227848, at *2 (N.D. Cal. Mar. 15, 2015); *see also AngioScore, Inc. v. TriReme Med., Inc.*, Case No. 12-cv-3393-YGR (JSC), 2014 WL 6706898, at *1 n.1 (N.D. Cal. Nov. 25, 2014); *but see S.F. Bay Area Rapid Transit Dist. v. Spencer*, No. C 04-4632-SI, 2006 U.S. Dist. LEXIS 81677, at *13 (N.D. Cal. Oct. 23, 2006) ("Service of Subpoenas at least 10 days before the deposition or production is customary, but not mandatory") (internal quotation omitted).

Here, the parties' primary dispute is whether Shazam had ten days to comply with the subpoena. Plaintiff argues that the subpoena was received on August 28, 2017, even if Shazam did not accept service until August 29, 2017. Thus, Plaintiff contends that Shazam had ten days to comply. (Plf.'s Opp'n at 3.) Shazam, in turn, counters that "[s]ending an email at 10:30 PM to counsel, without any prior communications whatsoever, and expecting that email to immediately impute knowledge of the subpoena *and its contents* to Shazam is not reasonable." (Shazam Reply at 5.) The Court agrees. While the subpoena may have been e-mailed on August 28, 2017, it is not reasonable to assume that Shazam actually received the subpoena that same day, given that it was sent after business hours -- and close to midnight on the east coast, where Shazam's counsel was located. Further, based on the record, it appears that Shazam's counsel did not have actual notice of the subpoena until the following morning. (*See* Roe Decl., Exh. 10 (August 29, 2017 e-mail stating that Shazam's counsel was authorized to accept service of the subpoena "as of today-- the day Shazam received such subpoena").) Thus, Shazam had fewer than ten days to comply with the subpoena, a period of time that courts in this district have found to be presumptively unreasonable.

Regardless of whether Shazam had nine or ten days to comply with the subpoena, the Court also finds that the time for compliance was not reasonable given the timing and scope of the subpoena. Again, the subpoena was first served on Shazam's counsel at 10:30 p.m., and required compliance in time for a September 7, 2017 deposition. This intervening period not only included a federal holiday, but a day of travel for Shazam's corporate witness, who was arriving from London, thus decreasing the period of time for the corporate witness to prepare. Further adding to the unreasonableness of the timing is the expansive scope of the subpoena. While Plaintiff argues

7

that Shazam's corporate representative was already scheduled for deposition on September 7, 2017, the topics the corporate representative was prepared for differed vastly from the topics raised by Plaintiff's subpoena. Defendant's August 16, 2017 deposition subpoena, for example, sought testimony on the public availability, design, development, operation, and functionality of the Shazam iOS app, Android app, web portal, and Shazam System as those apps and systems existed on or before May 28, 2013. (Roe Decl., Exh. 7.) Plaintiff's subpoena, in contrast, sought testimony and documents related to agreements, payments, information exchanged, and communications related to the instant litigation between Shazam and Defendant, as well as Shazam's use of Defendant's technology and Defendant's use of Shazam's technology. (Roe Decl., Exh. 9.) The time period and subject matter of these requests were unlimited, and it was not until September 4, 2017 -- two business days prior to the scheduled deposition and production date -- that Plaintiff limited the time period to the past two years. To expect Shazam to produce both documents and deposition testimony on such an expansive scope of topics in so short a period of time is unreasonable.[4] Because Plaintiff failed to give Shazam reasonable time to comply with the subpoena, the Court GRANTS Shazam's motion to quash.

## B. Undue Burden

In the alternative, Shazam argues that Plaintiff's subpoena imposes an undue burden on it. (Plf.'s Mot. at 9.) In determining whether there is undue burden, courts typically "balance[] the burden on the recipient of the subpoena, the relevance of the information sought to the claims or defenses at issue in the lawsuit, the scope or breadth of the discovery request, and the party's need for that information." *Third Degree Films, Inc. v. Does 1-178*, No. C 12-3858 EMC (MEJ), 2012 WL 12925674, at *2 (N.D. Cal. Dec. 6, 2012). The undue burden test also requires that the Court be "generally sensitive to the costs imposed on third-parties." *Id.* (internal quotation omitted).

The Court finds that the subpoena imposes an undue burden. Significantly, Plaintiff fails

---

[4] This is particularly the case where Plaintiff had prior notice of the pending deposition, as Plaintiff was cc'd on Defendant's August 16, 2017 deposition subpoena. (*See* Roe Decl., Exh. 7.) As Shazam points out, Plaintiff provides no explanation why they waited until August 28, 2017 to subpoena Shazam on these topics, when they could have done so earlier, giving Shazam more time to respond.

8

to explain the relevance of the information sought or why they need the information. Instead, Plaintiff states:

> [Plaintiff]'s document requests and deposition topics concern: (1) [Defendant]'s assertion that Shazam technology constitutes prior art to the patent asserted in this case; (2) the newly-established business relationship between Shazam and [Defendants]; and (3) communications between [Defendants] and Shazam regarding this litigation. These topics are undeniably relevant to the litigation.

Of these three topics, only the first appears to be relevant to the case. Plaintiff fails to explain, however, how the subpoena topics are related to the prior art issue. Instead, the Plaintiff's original subpoena seeks documents about agreements between Shazam and Defendants (including but not limited to licensing agreements, financing agreements, sales agreements, marketing agreements, investment agreements, agreements to transfer customer or advertiser or viewer information, and other business agreements), payments between Shazam and Defendants, information exchanged between Shazam and Defendants, services exchanged between Shazam and Defendants, Shazam's use of Defendants' technology, and Defendants' use of Shazam's technology. It is unclear how these topics are related to prior art, particularly when they are unbridled in subject matter and scope. As written, the original subpoena would cover financial agreements or business arrangements completely unrelated to the patent at issue in this case.[5] The narrowed subpoena topics, in turn, only concerns the past two years; it is not clear how this narrowed scope is relevant to prior art, particularly when Defendants' own focus on Shazam's technology appears centered on Shazam's apps and systems that existed in or prior to 2013.

As for the remaining two categories, Plaintiff provides no rationale for why the business relationship between Shazam and Defendants has any bearing on this case. There is no information on what this business relationship is or if it involves the patents at issue. Similarly, Plaintiff does not explain why communications between Defendants and Shazam about this litigation are relevant to the case. Simply because Plaintiff asserts that these topics are "undeniably relevant" does not automatically make them so. The relevance factor thus weighs

---

[5] Plaintiff's eighth deposition topic, which sought the same information as Defendants' August 16, 2017 subpoena, would have relevance to prior art, but again, this topic is not the subject of this motion to quash. (Shazam Mot. at 6.)

9

heavily in favor of quashing the subpoena.

Similarly, the scope and breadth of the discovery requests favor quashing the subpoena, as the original scope and time period were unlimited. While Plaintiff later limited the period to the last two years, Shazam points out that Plaintiff has only been able to identify one alleged agreement between Shazam and Defendants in the last 60 to 90 days, making it unclear why Plaintiff would still be seeking documents from the last two years. Further, the subject matter of the documents sought is not significantly narrowed, as it would require production of documents related to *any* agreements between Shazam and Defendants, regardless of their relation to the patent at issue. Whether narrowed or not, the scope and time period of the subpoena is disproportionate to what Plaintiff appears to actually be seeking.

Likewise, the burden on Shazam appears to be significant, which also weighs in favor of quashing the subpoena. Shazam asserts that its document production in response to Defendants' subpoena has already exceeded $50,000, and that responding to Plaintiff's document requests would likely incur similar costs. (Shazam Mot. at 11.) Plaintiff responds that Shazam has asserted that those documents were already produced to Defendants, and therefore the cost of complying with Plaintiff's subpoena "would be negligible." (Plf.'s Opp'n at 5.) This assumes, however, that Plaintiff is only seeking documents that Shazam has already produced to Defendants, such that Shazam would only be required to reproduce its prior production to comply with Plaintiff's subpoena. Indeed, at times Plaintiff appears to argue that is, in fact, all they are seeking. (*Id.*) Plaintiff's argument, however, is dependent on its claim that the subpoena at issue is on the same topics that were at issue in Defendants' subpoenas; it is not, however. Plaintiff's subpoena included a deposition topic that encompassed all of Defendants' deposition subpoena topics, yet Plaintiff still found it necessary to include seven additional topics for deposition and document production that included no limits on subject matter or time period. If Plaintiff truly sought only what was already produced to Defendants, such requests would be unnecessary. Instead, the additional requests contain a far broader scope than simply reproducing a prior production.

Moreover, Plaintiff fails to explain why it is seeking these documents from Shazam, a

third-party, when Defendants would have the same documents. "In essence, plaintiff[] would impose a heavy burden on [Shazam] to locate and analyze large amounts of information that should be available from [Defendants]." *Geller v. Von Hagens*, No. C11-80269 LHK(HRL), 2012 WL 1413461, at *4 (N.D. Cal. Apr. 23, 2012). All of the document requests seek materials that Defendants would have generated or received from Shazam, including agreements between Shazam and Defendants, payments made, information exchanged, services exchanged, communications relating to the instant litigation, and the use of each other's technology.[6] "That [Plaintiff] seek[s] these documents from a third party rather than from [Defendants] themselves only exacerbates the burdensomeness of the request." *Id.*

Considering all of the above, the Court concludes that the subpoena imposes an undue burden on Shazam.

**C. Sanctions**

In its motion, Shazam sought costs and expenses, including attorney's fees, if the Court was to modify Plaintiff's subpoena and require Shazam to respond. (Shazam Mot. at 12.) In its reply, Shazam seeks attorney's fees for having to make the motion to quash in the first place. (Shazam Reply at 14-15.) Because the Court quashes the subpoena, and Shazam did not seek attorney's fees for having to make the motion to quash until the reply, the Court DENIES Shazam's request for attorney's fees.

///
///
///
///
///
///
///
///

---

[6] Again, if Plaintiff was only seeking a reproduction of what Shazam produced to Defendants, it could have obtained those documents from Defendants.

11

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS Shazam's motion to quash. Plaintiff's subpoena fails to give Shazam reasonable time to comply with the subpoena. Even if the subpoena did give Shazam reasonable time to comply, the Court finds that the subpoena imposes an undue burden on a third party, particularly when the discovery sought appears to be of highly limited relevance to the case and, in any case, could be obtained from a party in this case.

IT IS SO ORDERED.

Dated: December 8, 2017

KANDIS A. WESTMORE
United States Magistrate Judge