UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FREE STREAM MEDIA CORP.,

    Plaintiff,

v.

ALPHONSO INC., et al.,

    Defendants.

Case No. 17-cv-02107-RS

**ORDER DENYING MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff in this action is Free Stream Media Corp, which does business as Samba TV ("Samba"). Defendants are Alphonso, Inc., and three individuals alleged to be its founders (collectively "Alphonso"). Samba charges Alphonso with infringement of U.S. Patent No. 9,386,356, entitled "Targeting with Television Audience Across Multiple Screens." Alphonso moves to dismiss, contending the patent claims are drawn only to abstract ideas, ineligible for protection under Section 101 of the Patent Act, as elucidated in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) and its progeny.

As the patent title reflects, the claimed invention involves the concept of targeting content—including advertising—to television viewers. Because the patent purports to overcome particular technological barriers to such targeting, Alphonso's characterization of it as claiming only an abstract idea fails, and the motion to dismiss must be denied.

## II.  BACKGROUND

A stated goal of the invention reflected in the '356 patent is to take advantage of a missed "revenue opportunity," specifically, the chance to profit by targeting ads to a person's smartphone based on information collected about the person, such as what the person has watched on television:

> A networked device (e.g., a television, a set-top box, a computer, a multimedia display, an audio device, a weather measurement device, a geolocation device) may have access to an information associated with a user. For example, the information may comprise an identification of a movie viewed by the user, a weather information, a geolocation information, and/or a behavioral characteristic of the user when the user interacts with the networked device.
>
> Furthermore, the networked device may present to the user an information that is irrelevant to the user. As a result, the user may get tired, annoyed, and/or bored with the networked device.
>
> Additionally, the user may waste a significant amount of time processing the information that is irrelevant to the user. Therefore, a revenue opportunity may be missed, because an interested party (e.g., a content creator, a retailer, a manufacturer, an advertiser) may be unable to access an interested audience.

'356 patent at 2:38-46, 59-67 (emphasis added).

To address this missed "revenue opportunity," the '356 patent proposes using a "relevancy matching server" that is connected to the person's networked device (*e.g.*, television) and mobile device (*e.g.*, a phone or tablet). The user's TV viewing information is gathered as "primary data," defined as "data that may be associated with a user and matched with targeted data."

The television may provide the primary data directly (*e.g.*, by identifying the show title or specific commercial being broadcast), or it may capture snippets of audio or video "fingerprint data" from which the current broadcast can be identified.  The invention's "relevancy matching server" then searches a database to find matching "targeted data" (*e.g.*, an advertisement) that relates to what is on the television, and displays the selected targeted ad on the person's mobile device.

Pursuant to an agreement between the parties, Samba has elected to proceed on five claims

of the '356 Patent.[1] Those claims are 1, 10, 13, 18, and 20, although Samba's entitlement to proceed on claim 20 is subject to its pending motion for leave to amend its infringement contentions. Alphonso's motion to dismiss presents Claim 14 as a "representative" claim, although it is no longer asserted in the litigation. Samba is still pursing Claim 10, however, which it acknowledges is similar. Indeed, while the asserted claims all differ in various respects, the patent ineligibility argument as framed by Alphonso does not turn on those differences. Accordingly, Claim 1 serves as an example. It claims:

> A system comprising:
>> a television to generate a fingerprint data;
>> a relevancy-matching server to:
>>> match primary data generated from the fingerprint data with targeted data,
>>>> based on a relevancy factor, and
>>> search a storage for the targeted data;
>> wherein the primary data is any one of a content identification data and a content identification history;
>> a mobile device capable of being associated with the television to:
>>> process an embedded object,
>>> constrain an executable environment in a security sandbox, and
>>> execute a sandboxed application in the executable environment; and
>> a content identification server to:
>>> process the fingerprint data from the television, and
>>> communicate the primary data from the fingerprint data to any of a
>>>> number of devices with an access to an identification data of at least one
>>>> of the television and an automatic content identification service of the
>>>> television.

---

[1] By joint stipulation, claims under a second patent have been dismissed.

Alphonso insists all of Samba's infringement claims should be dismissed because the '356 patent "claims nothing more than the abstract idea of selecting and sending targeted data to a person's mobile phone or tablet, based on information gathered about the person, such as what the person has watched on TV."

### III. DISCUSSION

As explained in *Alice*, the Supreme Court has "interpreted § 101 and its predecessors ... for more than 150 years" to "'contain[ ] an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable.' " The *Alice* court applied a two-step framework for determining patent eligibility, previously articulated in *Mayo Collaborative Servs. v. Prometheus Labs.,* Inc., 132 S.Ct. 1289 (2012):

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.

*Alice*, 134 S.Ct. at 2355.

*Alice* also explained, "The 'abstract ideas' category embodies "the longstanding rule that '[a]n idea of itself is not patentable.' " *Id*. at 2355; *see also Le Roy v. Tatham*, 14 How. 156, 175, 14 L.Ed. 367 (1853). ("A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right").

*Alice* repeated the caution given in *Mayo*, however, that the exclusion for "abstract ideas" must not be applied too broadly, "we tread carefully in construing this exclusionary principle lest it swallow all of patent law." 134 S.Ct. at 2354 (*citing Mayo*, 132 S.Ct. at 1293–1294.) At some level, "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural

phenomena, or abstract ideas." *Mayo*, 132 S.Ct. at 1293.

On the facts before it, the *Alice* court also expressly declined to "labor to delimit the precise contours of the 'abstract ideas' category." 134 S.Ct. at 2357. Instead, it merely found that the concept of providing an "intermediated settlement" was not meaningfully distinguishable from the idea of "risk hedging" at issue in *Bilski v. Kappos*, 561 U.S. 593 (2010). In both instances, the idea involved was "a fundamental economic practice long prevalent in our system of commerce." *Id*. at 2356.

Here, Samba relies heavily on *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327 (Fed. Cir. 2016), which reversed a district court's finding of ineligibility under *Alice*. At issue in *Enfish* was "an innovative logical model for a computer database." *Enfish* supports the notion that a dividing line can be drawn between patents which merely describe using a computer and/or the internet to carry out pre-existing and well-known tasks and techniques, and those that relate to the functioning of computers themselves. The former will virtually always fail under *Alice* unless some "inventive concept" can be found in the second step of the analysis; the latter are substantially less easily characterized as merely abstract ideas.

*Enfish* explains:

> The first step in the *Alice* inquiry in this case asks whether the focus of the claims is on the specific asserted improvement in computer capabilities (*i.e*., the self-referential table for a computer database) or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool. As noted *infra*, in *Bilski* and *Alice* and virtually all of the computer-related § 101 cases we have issued in light of those Supreme Court decisions, it was clear that the claims were of the latter type—requiring that the analysis proceed to the second step of the *Alice* inquiry, which asks if nevertheless there is some inventive concept in the application of the abstract idea. *See Alice*, 134 S.Ct. at 2355, 2357–59. In this case, however, the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity.

822 F.3d at 1335–36.

*Enfish* drew a line between "improvement[s] to computer functionality itself," and

"economic or other tasks for which a computer is used in its ordinary capacity." The court concluded:

> we find that the claims at issue in this appeal are not directed to an abstract idea within the meaning of *Alice*. Rather, they are directed to a specific improvement to the way computers operate . . . ."

*Id.* at 1336.

This same distinction was at issue in *OpenTV, Inc. v. Netflix, Inc.*, 76 F. Supp. 3d 886 (N.D. Cal. 2014), a case that Alphonso urges is more instructive here. In *OpenTV*, one of the patents described "A method for providing targeted programming to a user outside of the user's home." The order concluded the patent did not pass *Alice* muster because:

> The concept of gathering information about one's intended market and attempting to customize the information then provided is as old as the saying, "know your audience." Like the concepts in *Bilski* and *Alice*, the mere fact that generic computer processors, databases, and internet technology, can now be used to implement the basic idea, with certain perceived greater advantages, does not give rise to a patentable method. The '691 patent simply takes "long prevalent" concepts and, in the specification, proposes using the data and communication resources that are available through the internet to carry them out more effectively.

76 F. Supp. 3d at 893.

Alphonso insists the '356 patent likewise claims nothing more than the same basic abstract idea—it teaches targeting advertising (or other data) to a consumer based on using data gathered about what the consumer is watching on TV, *i.e.,* "know your audience."

Alphonso's characterization of the patent is not persuasive. The '356 patent is not directed at merely the abstract idea of targeting advertising. Rather, it describes systems and methods for addressing barriers to certain types of information exchange between various technological devices, *e.g.* a television and a smartphone or tablet being used in the same place at the same time. To be sure, the end goal of the invention is to improve the delivery of relevant information—i.e., targeting advertising (or other content)—but that does not mean that it does nothing more than direct a person of ordinary skill in the art to use a computer system to implement a conventional and known process. *See Enfish*, 822 F.3d at 1339 ("In other words, we are not faced with a

situation where general-purpose computer components are added post-hoc to a fundamental economic practice or mathematical equation. Rather, the claims are directed to a specific implementation of a solution to a problem in the software arts.")

Alphonso does not dispute that *if* the patent were so-directed, it would pass the *Alice* test at the first stage. Alphonso argues instead, with some justification, that on their face the claims do not expressly refer to, or obviously address, technological barriers, or how such barriers are being overcome through the invention. Nevertheless, the claims plainly describe methods and systems that call for the very kinds of communications between devices that are not possible through conventional devices operating in standard fashion.

To the extent Alphonso is arguing that the patent does not adequately explain *how* the barriers are overcome when the described system and methods are employed, such issues do not support a finding of patent ineligibility under Section 101. In *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017), the Federal Circuit rejected the view that where a patent "lacks any details about how [the invention's purpose] is achieved," it "is not properly described as directed to an improvement in computer systems." *Id.* at 1260–61. Rather, the court held, "whether a patent specification teaches an ordinarily skilled artisan how to implement the claimed invention presents an enablement issue under 35 U.S.C. § 112, not an eligibility issue under § 101." *Id.* at 1261.

Finally, because the claims are directed at specific techniques for connecting the content on a television and a mobile device through purported technological improvements, the analysis need go no further.

> We recognize that, in other cases involving computer-related claims, there may be close calls about how to characterize what the claims are directed to. In such cases, an analysis of whether there are arguably concrete improvements in the recited computer technology could take place under step two. Here, though, we think it is clear for the reasons stated that the claims are not directed to an abstract idea, and so we stop at step one. We conclude that the claims are patent-eligible.

*Enfish*, 822 F.3d at 1339.

So too, here.  Alphonso has failed to show that the complaint is subject to dismissal on grounds that the asserted claims of the '356 patent are directed at unpatentable subject matter.  The motion must be denied. [2]

## IV.  CONCLUSION

The motion to dismiss the Second Amended Complaint is denied.

**IT IS SO ORDERED**.

Dated:  January 12, 2018

RICHARD SEEBORG
United States District Judge

---

[2] Samba also argues Alphonso failed to address elements found in claims other than Claim 14, and therefore did not meet its burden as to any of those claims.  If, however, Alphonso's high-level characterization of the patent claims were otherwise persuasive, the failure to address the various claims individually would not be an independent reason to deny the motion.

ORDER DENYING MOTION TO DISMISS
CASE NO. 17-cv-02107-RS